23-mj-1353-JCB

# AFFIDAVIT OF SPECIAL AGENT JASON TAYLOR
# IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Jason Taylor, being sworn, state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I was appointed to the FBI in May 2019. As such, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code: that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2. I am currently assigned as a Special Agent to the FBI Metro Boston Gang Task Force ("MBGTF"). My duties include working as a liaison between federal, state, and local law enforcement entities in the investigation of illegal distribution of narcotics, firearm offenses, and associated gang-related violent crimes. In the course of participating in investigations of drug distribution/trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs and firearms, the execution of search warrants, debriefings of subjects, witnesses, and informants and reviews of consensually recorded conversations and meetings.  Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, to include their use of cellular telephones to contact drug customers, drug runners, drug associates, and sources of illegal drug supply.  I am familiar with narcotics traffickers' methods of operation, including distribution, storage, and transportation of narcotics.

3. Prior to my current assignment, I was assigned to the FBI Miami Field Office where I conducted investigations in Transnational Organized Crime Western Hemisphere, prior to the

1

assignment in Miami I was a United States Army Infantry Officer where I conducted Counter Terrorism and Counterinsurgency Operations.

4.  Based on my training and experience as a Special Agent, I am familiar with federal firearms laws. I know that it is a violation of Title 18 U.S.C. § 922(o) to transfer or possess a machinegun.

## PURPOSE OF AFFIDAVIT

5.  I submit this affidavit in support of a Criminal Complaint charging Michael Williams ("WILLIAMS"), born 1973, with violating 18 U.S.C. § 922(o) (transferring or possessing a machinegun).

6.  I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the FBI and other federal, state and local law enforcement agencies.

7.  I submit this affidavit for the limited purpose of establishing probable cause to believe WILLIAMS has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## THE INVESTIGATION

I.  BACKGROUND

8.  The Federal Bureau of Investigation ("FBI") and the Chelsea Police Department ("CPD") are investigating WILLIAMS, who is known by investigators to be a firearms trafficker. WILLIAMS is selling firearm accessories and machinegun conversion devices, also commonly known as "switches" or "Glock switches," in the Boston area, since at least as early as January 2023. WILLIAMS has met with an FBI undercover agent ("UC-1") at predetermined locations, on

multiple occasions, where he has sold machinegun conversion devices and other firearms accessories to UC-1. During this investigation, investigators reviewed consensually recorded controlled purchases of machinegun conversion devices and firearm accessories from WILLIAMS. Recordings in connection with these transactions include recorded telephone calls and text messages between WILLIAMS and UC-1, as well as audio/video recordings of the controlled purchases.

9. I am also aware, based in part on records checks of the Massachusetts Board of Probation ("BOP") and Interstate Identification Index ("III"), that WILLIAMS has numerous prior arrests and convictions on his criminal history, including convictions for breaking and entering with intent to commit a felony, possession of a large capacity firearm, possession of a defaced firearm, possession of ammunition, leaving the scene of personal injury, and possession of a controlled substance with intent to distribute.

10. I am familiar with a type of firearm part known as a machinegun conversion device, which converts certain firearms from semi-automatic to fully-automatic, thus rendering the firearms capable of firing multiple shots by a single function of the trigger. As these parts are intended to convert a firearm into a machinegun, a machinegun conversion device itself qualifies as a "machinegun" under the statute. Under 18 U.S.C. § 922(o), it is unlawful for any person to transfer or possess a machinegun that is not lawfully owned and registered. It is illegal to possess an unregistered machinegun, whether or not the individual is a prohibited person under 18 U.S.C. § 922, for another reason such as a felony conviction.

11. I have learned during the course of this investigation that WILLIAMS is not a licensed importer, licensed manufacturer, or licensed dealer of firearms. Further, a query of the Massachusetts Criminal History Records Bureau – Massachusetts License to Carry ("LTC") /

Firearms Identification Card ("FID") records revealed that WILLIAMS does not possess a MA LTC and/or FID.

## II.     CONTROLLED PURCHASE FROM WILLIAMS ON JANUARY 12, 2023

12.     On January 12, 2023, WILLIAMS communicated with an FBI Confidential Human Source ("CHS") [1] through a series of phone calls and text messages, during which WILLIAMS agreed to sell one machinegun conversion device and additional firearm accessories for various prices, to UC-1, who accompanied the CHS, along with another FBI undercover agent ("UC-2"). During these initial communications, they agreed to meet at TARGET LOCATION – 1.[2]

13.     Following the series of communications between WILLIAMS and the CHS, law enforcement officers searched the CHS for contraband and money with negative results. Law enforcement officers provided UC-1 and UC-2 with official agency funds ("OAF") to complete the firearms purchase and an audio/video recording device and a transmitter, which recorded the controlled purchase. Law enforcement officers then instructed the CHS, accompanied by UC-1 and UC-2, to meet with WILLIAMS and make the firearm-related purchase, and subsequently surveilled the CHS, UC-1 and UC-2 to the pre-arranged meeting location in the vicinity of TARGET LOCATION – 1 in Chelsea, MA.

14.     At around the same time, additional law enforcement officers were conducting surveillance at the TARGET LOCATION – 1 in Chelsea, MA and observed the CHS, UC-1, and

---

[1] The CHS is known to law enforcement and has previously provided information relevant to unrelated investigations that law enforcement has either corroborated or otherwise found to be reliable. The CHS has worked several prior investigations with both the FBI and the Boston Police Department. The information provided was deemed corroborated and proved credible; it led to numerous arrests. Similarly, the information provided in this matter has proven equally reliable. Though the CHS has some criminal history, his most recent conviction (of which I am aware) dates back more than ten years and, regardless, does not cause me to question his credibility with respect to this investigation. That is primarily because, as outlined herein, law enforcement has been able to corroborate the substance of the information provided by the CHS.

[2] I am aware that TARGET LOCATION – 1 is WILLIAMS residential address in Chelsea, MA. I am not including that specific address for the purpose of this affidavit in support of a criminal complaint.

UC-2 arrive at the TARGET LOCATION – 1. Agents, while monitoring the controlled purchase via the transmitter, observed the following: The CHS, UC-1, and UC-2 parked within the parking lot of TARGET LOCATION – 1 in Chelsea, MA. WILLIAMS subsequently walked out of the front door of TARGET LOCATION – 1 and entered the UC vehicle. The CHS, UC-1, UC-2, and WILLIAMS engaged in a brief conversation while located within the UC vehicle, during which WILLIAMS and UC-1 conducted an exchange. During this conversation WILLIAMS told UC-1 that he (WILLIAMS) has four "clips" loaded here. WILLIAMS also stated that he "has more 'switches' coming later today and will get you (UC-1) the rest tomorrow." Furthermore, WILLIAMS stated that he can install the switch on the firearm in "two seconds."

15. After the CHS, UC-1, and UC-2 left the vicinity of TARGET LOCATION – 1, law enforcement officers surveilled the CHS, UC-1, and UC-2 to a predetermined location and UC-1 and UC-2 provided law enforcement officers with a plastic bag containing one machinegun conversion device, four firearm magazines, and numerous rounds of ammunition. Law enforcement officers then searched the CHS again, with negative results. During the debriefing, UC-1 told agents that following the communications with WILLIAMS, the CHS, UC-1, and UC-2 met with WILLIAMS where UC-1 purchased the machinegun conversion devices and firearm accessories in exchange for the OAF.

16. The bag contained one machinegun conversion device, four firearm magazines, and numerous rounds of ammunition. The machinegun conversion device was further tested at the Alcohol Tobacco and Firearms (ATF) Laboratory and was identified as a machinegun as defined by 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b).

### III. CONTROLLED PURCHASE FROM WILLIAMS ON JANUARY 13, 2023

17. On January 13, 2023, WILLIAMS communicated with UC-1 through a series of phone calls and text messages, during which WILLIAMS agreed to sell two machinegun conversion devices to UC-1. During these initial communications, they agreed to meet again at TARGET LOCATION – 1.

18. Following the series of communications between WILLIAMS and UC-1, law enforcement officers provided UC-1 and UC-2 with OAF to complete the firearm-related purchase and an audio/video recording device and a transmitter, which recorded the controlled purchase. Law enforcement officers subsequently surveilled UC-1 and UC-2 to the pre-arranged meeting location in the vicinity of TARGET LOCATION – 1 in Chelsea, MA.

19. At around the same time, additional law enforcement officers were conducting surveillance at the TARGET LOCATION – 1 in Chelsea, MA and observed UC-1 and UC-2 arrive at the target location. Agents, while monitoring the controlled purchase via the transmitter, observed the following: UC-1 and UC-2 parked within the parking lot of TARGET LOCATION – 1 in Chelsea, MA. WILLIAMS walked out of the front door of TARGET LOCATION – 1 and entered the UC vehicle. UC-1, UC-2, and WILLIAMS engaged in a brief conversation while located within the UC vehicle, during which WILLIAMS and UC-1 conducted an exchange. During this conversation WILLIAMS provided UC-1 with two machine conversion devices and firearm accessories for an AR-15 rifle and a Glock pistol, including one picatinny rail and one firearm spring. Further, WILLIAMS offered to install the firearm spring for better operation of a machinegun.

20. After UC-1 and UC-2 left the vicinity of TARGET LOCATION – 1, law enforcement officers surveilled UC-1 and UC-2 to a predetermined location and UC-1 and UC-2

provided law enforcement officers with the two machine conversion devices, one picatinny rail and one firearm spring. During the debriefing, UC-1 told agents that following the communications with WILLIAMS, UC-1 and UC-2 met with WILLIAMS where they purchased the two machine conversion devices and firearm accessories, in exchange for the OAF.

21. The bag contained two machine conversion devices, one picatinny rail and one firearm spring. The machine conversion devices were further tested at the ATF Laboratory, and both were identified as a machinegun as defined by 18 U.S.C. 921(a)(23) and 26 U.S.C. § 5845(b).

## CONCLUSION

22. Based on the foregoing, there is probable cause to believe that on January 12 and 13th, 2023, in Chelsea, in the District of Massachusetts, WILLIAMS transferred and possessed machineguns, in violation of Title 18, United States Code, Section 922(o).

I declare the foregoing is true and correct.

_____
Jason Taylor
SPECIAL AGENT, FBI

The affiant appeared before me on this date, by telephonic conference or other reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Subscribed and sworn to on
this 26 day of July, 2023.

_____
HONORABLE DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

